**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

**TINA R.,**

               **Plaintiff,**

   **v.**                     **Civil Action 1:25–cv–00339**
                                     **Judge Michael R. Barrett**
                                     **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

               **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Tina R. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the following reasons, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff filed her application for DIB on July 16, 2021, alleging disability beginning December 1, 2020, due to schizophrenia, bipolar disorder, severe depression, chronic back pain with sciatica and COPD. (R. at 280–81, 352). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephonic hearing on February 14, 2024. (R. at 96–126). Ultimately, the ALJ denied Plaintiff's application in a written decision on May 23, 2024. (R. at 76–95). The Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on May 22, 2025. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has

been fully briefed.  (Docs. 7, 8, 11, 13).  The matter is ripe for review.

### A.    Relevant Hearing Testimony and Statements to the Agency

The ALJ summarized Plaintiff's testimony from the administrative hearing and statements

to the agency as follows:

> [Plaintiff] alleges disability mainly due to back issues, COPD, and mental health impairments. She testified that when she comes to stairs, she tries to take it slowly. She stated that her back is getting bad where it would burn when she did her chores and dishes, and she would have to sit down for minute. [Plaintiff] reported that she is on medication for schizophrenia, nerve issues in her legs, and for sleep and has no side effects. She said she has sleep apnea, her legs swell badly, and she has a nebulizer and 3 different inhalers. She contended that she does not have a back brace, but uses a cane when her pain gets severely bad and takes it with her if she walks a distance. [Plaintiff] stated that she usually gets her son to take her to the doctor because she does not know where they are, and she knows she could use GPS, but when her panic attacks hit, she freezes and cannot even take her grandchildren home. She reported that she cannot drive alone, and she writes a lot of things down because her schizophrenia affects her memory. [Plaintiff] testified that she could sit for about 30 minutes before getting up, stand for about 10 to 15 minutes, and lift about 10 to 20 pounds. She said that she has difficulty being around people, and she thinks people are judging her or making fun of her. She stated that she used to be able to control her anger, but it is getting bad, and her last job, she did not want to lash out, but could not control it. She contended that she had issues with falling, and she would be walking, and her legs would give out, and her hands just release things. [Plaintiff] alleged that she has no feeling her left leg.

(R. at 84–85).

> She testified that she has a license, but has issues driving due to panic attacks. [Plaintiff] reported that her back burns when she does chores and dishes, and vacuuming hurts even worse, and she likes cleaning. She stated that she has dogs, and she has issues showering because she cannot standing for long and lifting her hands over her head and sometimes skips a few days and has her granddaughter help.

(R. at 86).

**B.**     **Relevant Medical Evidence**

The ALJ discussed Plaintiff's medical records and symptoms related to her physical impairments as follows:

> February 2020 medical records document [Plaintiff] reporting leg and hip pain, and on exam, she had full musculoskeletal range of motion, but pain with manipulation of both hips mostly at trochanteric insertion (Exhibit B4F/42–43). She was assessed with sciatica, referred to neurology, and directed to use aspercreme (Exhibit B4F/43). May 28, 2020 bilateral hip x–rays showed no significant hip abnormality (Exhibit B3F/5). At her March 2022 consultative exam, he had full muscle strength in all areas including the thoraco–lumbar spine and bilateral hips, normal gait and station, reduced lumbar range of motion, but otherwise normal range of motion in all joints including the bilateral hips, and negative straight leg raising (Exhibit B5F/2–6). She had normal spine curvature, no paravertebral muscle spasm or tenderness with percussion of the lumbar spinous processes, and no tenderness to palpation of the hips (Exhibit B5F/8). August 2022 treatment notes show she was given a refill of ibuprofen for her back pain (Exhibit B8F/5). [Plaintiff] had a normal December 5, 2022 left lower extremity venous doppler ultrasound (Exhibit B11F/37). A May 4, 2023 physical exam revealed full musculoskeletal range of motion (Exhibit B10F/14). A May 12, 2023 lumbar spine x–ray showed grade 1 anterolisthesis of L4 on L5 (Exhibit B11F/36). July 13, 2023 treatment records document [Plaintiff] reporting worsening back pain, and on exam, she had positive straight leg raise on the left at 45 degrees, had steady gait, could get up on the table and down without difficulty, and had tenderness over the left paraspinous muscles at L5–S1 (Exhibit B10F/1–4). An August 23, 2023 lumbar spine MRI revealed multilevel discogenic degenerative changes and facet arthrosis with the changes most pronounced at L4–5 facet arthrosis with grad 1 anterolisthesis, and moderate bilateral L4 foraminal narrowing (Exhibit B13F/2). She complained of worsening back pain in October 2023, and she received a refill for gabapentin (Exhibit B14F/2). February 2024 records show she had a normal EMG study, with no evidence of L2–S1 radiculopathy (Exhibit B15F/2).
>
> At her March 2022 consultative exam, her breath sounds were distant, and she had no rales, rhonchi, wheezes, or evidence of cyanosis (Exhibit B5F/8). Also it was noted that [Plaintiff] continued to smoke one pack of cigarettes daily despite her respiratory complaints, and she was not dyspneic during the exam (Exhibit B5F/9). April 2022 records document [Plaintiff] had low oxygen level, and was referred to pulmonology for COPD (Exhibit B8F/15–16). [Plaintiff] had prescriptions for albuterol, Dulera, and Spiriva inhalers (Exhibit B8F/14). June 24, 2022 records note [Plaintiff] presented to the emergency room with shortness of breath getting worse over the past few days with her being recently diagnosed with COPD and placed on several inhalers (Exhibit B11F/7). On exam, she had normal pulmonary effort and no respiratory distress with normal breath sounds and no wheezing, rhonchi, or rales (Exhibit B11F/9). A chest x–ray showed no focal infiltrate (Exhibit B11F/20).

> She was assessed with acute exacerbation of COPD, instructed to continue her inhalers, and was given prednisone (Exhibit B11F/11). In July 2023, she reported worsening symptoms, but she was out of her inhaler (Exhibit B9F/9).

(R. at 85–86).

The ALJ discussed Plaintiff's medical records and symptoms related to her mental impairments as follows:

> ***February 10, 2020 medical records document [Plaintiff] reporting that she think she needed to talk to someone and was stressed, but denied suicidal or homicidal ideation (Exhibit B4F/45). She reported symptoms of feeling anxious, worrying, trouble relaxing, irritability, feeling depressed, trouble sleep, low energy, and trouble concentrating (Exhibit B4F/45). She was assessed with anxiety disorder, depression, and substance use disorder (Exhibit B4F/46). February 11, 2020 behavioral health records reveal on exam [Plaintiff] was alert and oriented, and had normal speech, logical, linear, and goal directed thinking, euthymic mood, and congruent affect with her denying any issues with memory (Exhibit B4F/40). She had an additional diagnosis of schizoaffective disorder, bipolar type, and her prescriptions included Vraylar, hydroxyzine pamoate, and trazodone (Exhibit B4F/40). She was doing fairly well in July 2020 progress notes (Exhibit B4F/33). At her April 2022 consultative exam, she was alert, expressed her thought in a logical, relevant, and clear fashion, had no paranoid ideation or hallucinatory behavior noted, had depressed mood, and appeared tense and on edge (Exhibit B6F/4). She correctly counted from 1 to 20 and back down to 1, correctly spelled "world" forward and backward, and correctly answered a simple addition, subtraction, multiplication, and division problem (Exhibit B6F/5). It was noted that there was insufficient evidence [to] offer a diagnosis of schizophrenia (Exhibit B6F/5). In July 2022, she reported that she wanted to work on her rage (Exhibit B12F/1). August 2022 progress notes show [Plaintiff] reporting that she was adherent to her medication with partial benefits so far, and she had a normal mental status exam except depressed mood and was started on Latuda and continued on hydroxyzine pamoate (Exhibit B8F/8). In December 2022, she reported hearing voices, and she reported no side effects from medication in January 2023 (Exhibit B9F/19, 15). October 2023 progress notes show [Plaintiff] reporting that she was having memory issues and thought it was due to her medication for schizophrenia, and she had normal mental status exam findings (Exhibit B14F/2).

(R. at 85).

## C.     The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2025.  (R. at 81).  She had not engaged in substantial gainful activity since December 1, 2020, the

4

alleged onset date. (*Id.*). The ALJ also determined that Plaintiff has the following severe impairments: lumbar degenerative disc disease, chronic obstructive pulmonary disease (COPD), schizophrenia, bipolar disorder, depression, post–traumatic stress disorder (PTSD), and anxiety. (R. at 82). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (*Id.*).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

[Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can stand and/or walk for about 4 hours and sit for about 6 hours in an 8–hour workday. She can never climb ladders, ropes, and scaffolds or crawl, and can occasionally climb ramps and stairs, stoop, kneel, and crouch. [Plaintiff] can tolerate occasional concentrated exposure to extreme heat, extreme cold, humidity, wetness, dusts, odors, fumes and pulmonary irritants, and should avoid unprotected heights. She can perform simple, routine, and repetitive tasks performed in a work environment free of fast–paced production requirements and involving only simple, work–related decisions with few, if any, workplace changes. [Plaintiff] is further limited to only occasional interaction with the public and coworkers with no tandem tasks.

(R. at 83–84).

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. at 85).

The ALJ determined that Plaintiff is unable to perform her past relevant work as an informal waitress, store laborer, housekeeping cleaner, cashier II, line assembler utility worker, or general inspector. (R. at 88). Relying on the vocational expert's ("VE") testimony, the ALJ found that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform at the light exertional level, such as a merchandise, routing clerk, or inspector/hand packager. (R. at 89). Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act,

from December 1, 2020, through the date of this decision (20 CFR 404.1520(g)).” (*Id.*).

## II.    STANDARD OF REVIEW

The Court's review “is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.” *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). “[S]ubstantial evidence is defined as ‘more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’” *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

“After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court.” *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, “even if a reviewing court would decide the matter differently.” *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.    DISCUSSION

Plaintiff begins by claiming the ALJ erred by not evaluating Dr. Swedberg's opinion for supportability and by not evaluating Dr. Rosenthal's opinion for consistency.  (Doc. 8 at 7–14). Plaintiff also contends that the ALJ erred by interpreting a “critical body” of objective medical evidence in functional terms.  (*Id.* at 14–17).  The Undersigned evaluates each in turn.

### A.    Dr. Swedberg

In her first assigned error, Plaintiff takes aim at how the ALJ treated the opinion of consultative examiner, Philip Swedberg, M.D.  Specifically, Plaintiff says the ALJ evaluated Dr.

Swedberg's opinion for consistency with other evidence in the record but reversibly erred by failing to evaluate it for supportability.  (Doc. 8 at 7–9).

A claimant's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [her] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The assessment must be based on all the relevant evidence in the case file.  *Id.*; *see also* 20 C.F.R. §§ 416.913(a), 416.920c (2017).  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1]  20 C.F.R. § 416.913(a)(1)–(5).  Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources."  20 C.F.R. § 416.920c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements."  20 C.F.R. § 416.920c(c)(1)–(5).

---

[1] The regulations define prior administrative findings:

A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (*see* § 416.1400) in your current claim based on their review of the evidence in your case record . . . .

§ 416.913(a)(2), (5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

Thus, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, 2021 WL 1877173, at *11. The role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.* at *14.

Dr. Swedberg evaluated Plaintiff for disability purposes in March 2022. (R. at 548–60). Dr. Swedberg opined that Plaintiff had no difficulty reaching, grasping, and handling objects, and was capable of "mild to moderate" amount of sitting, ambulating, standing, bending, kneeling, pushing and pulling, lifting, and carrying heavy objects. (R. at 556). Ultimately, the ALJ found Dr. Swedberg's opinion was "somewhat persuasive." (R. at 85–87). The ALJ found that Dr. Swedberg's opinion is consistent with treatment notes from other physicians showing Plaintiff had lumbar degenerative disc disease and chronic obstructive pulmonary disease. (R. at 87 (citing R. at 695–720, 742–58)). But the ALJ found that Dr. Swedberg's designation of "mild to moderate" limitations was vague. (*Id.*).

Supportability requires the ALJ to evaluate how much the medical conclusions are supported internally, as well as by other treatment notes and exams by the evaluating physician. 20 CFR 404 § 1520c(c)(1); *Michael R. v. Comm'r of Soc. Sec.*, No. 2:22–CV–4117, 2023 WL 6160626, at *5 (S.D. Ohio Sept. 21, 2023) ("The ALJ properly evaluated the supportability of Ms. Riffle's opinion given the lack of objective evidence in the opinion itself and when compared to Ms. Riffle's past treatment notes."), *report and recommendation adopted*, No. 2:22–CV–4117 WL 688754 (S.D. Ohio Feb. 20, 2024); *see also Thomas J. v. Comm'r of Soc. Sec.*, No. 1:24–CV–0048, 2024 WL 3841221, at *10 (S.D. Ohio Aug. 15, 2024).  This is what the ALJ did.

The ALJ classified the "mild to moderate" designation as "vague."  (R. at 87 (citing R. at 556)).  Finding a conclusion vague goes to the supportability factor.  *Cari A. H-R. v. O'Malley*, No. 3:23-CV-00678-RSE, 2025 WL 644279, at *7 (W.D. Ky. Feb. 27, 2025).  Although such a classification is not on its own a sufficient supportability analysis, *id.*, the ALJ does not err if he includes "further commentary as to the objective medical evidence and supporting explanation underlying the opinion." *Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-CV-4932, 2022 WL 765217 (S.D. Ohio Mar. 14, 2022).  This commentary may be made through reference to other portions of his decision.  *Cari A. H-R.*, 2025 WL 644279, at *7.  Put differently, the ALJ must articulate in the decision why he found a conclusion to be vague.  The ALJ did so.

Immediately after finding the conclusion vague, the ALJ noted that he nevertheless placed Plaintiff's RFC "between sedentary and light." (R. at 87).  From this, the Undersigned gathers that the ALJ found Dr. Swedberg's conclusion vague because Swedberg did not say how much a "mild to moderate" amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects is.  So, the ALJ placed his RFC determination somewhere between sedentary and light to best translate the conclusion into functional terms.  Indeed, the ALJ

prescribed Plaintiff to light work, but said she can stand and walk for four hours, and can sit for six hours in an eight-hour workday. (R. at 83–84). He also said that she could never climb ladders, ropes, and scaffolds, or crawl. (*Id.*). In referencing the RFC finding, the Undersigned can adequately trace the ALJ's reasoning for why he found this designation was vague.

Even if the ALJ failed to provide a supportability analysis here, however, categorizing an opinion as vague with no other discussion of the evidence is not harmful error if the ALJ "adopted the medical opinion or made findings consistent with the opinion." *Cari A. H-R.*, 2025 WL 644279, at *7. Although the ALJ found the conclusion vague here, he nevertheless adopted Swedberg's functional assessment to the best of his ability, as discussed above. Thus, any error on the part of the ALJ was harmless. *Id.*

Still, Plaintiff argues that the "mild to moderate" designation is not vague because ALJs say individuals have "mild" or "moderate" limitations "in essentially every written decision." (Doc. 13 at 1). But this misses the point. The Undersigned may not make *de novo* determinations about the opinion's vagueness, and thus its supportability. *Holston*, 2021 WL 1877173at *14. Rather, it is the role of the Undersigned to ensure that the ALJ employed the proper legal standard by considering the factors and supporting his conclusion with substantial evidence. *Id.* Because the Undersigned can trace the ALJ's reasoning, the Undersigned concludes the ALJ followed the regulations here. Plaintiff's contention of error is without merit.

**B.     Dr. Rosenthal**

Plaintiff also contends that the ALJ evaluated the opinion of consultative psychologist, James Rosenthal, Psy.D.'s opinion for supportability, but not consistency. (Doc. 8 at 9–14).

The law explained above applies here. Unlike supportability, which requires the ALJ to compare medical conclusions to the evidence offered by the reporting physician herself, consistency requires the ALJ to compare the report's conclusions to the evidence offered in other

sources in the record. 20 CFR 404 § 1520c(c)(2); *see also David W. v. Comm'r of Soc. Sec.*, No. 3:24–CV–00255, 2025 WL 841074, at *7 (S.D. Ohio Mar. 18, 2025) ("Here, the ALJ clearly evaluated the consistency of Dr. Swedberg's opinion by comparing his findings to other medical evidence and Plaintiff's subjective accounts of his symptoms. That is all the ALJ had to do.").

In April 2022, Dr. Rosenthal performed a consultative evaluation of Plaintiff and noted that she appeared distracted and anxious during the examination, appeared to be of low–average intelligence, could understand and follow the interview questions, and reported getting irritated with people quickly though she was polite, cooperative, and easy to engage in the examination. (R. at 566–67).

The ALJ found Dr. Rosenthal's opinion "persuasive," noting as follows:

> Dr. Rosenthal did not provide a functional analysis of [Plaintiff]'s ability to perform work activity, but did note that she appeared distracted and anxious during the exam, appeared to be of low average intelligence, could understand and follow the interview questions, and reported that she found herself getting irritated with people quickly though she as polite, cooperative and easy to engage in the exam. These observations would support moderate limitations in the paragraph B criteria (Exhibit B6F).

(*Id.*).

While the ALJ did not compare Dr. Rosenthal's opinion to the rest of the record, the Commissioner claims that the ALJ was not required to do so because Dr. Rosenthal's opinion was not a medical opinion. (Doc. 11 at 7). Plaintiff does not dispute this in her reply. (*See* Doc. 13). The Undersigned ultimately agrees with the Commissioner. Under the regulations, an ALJ is not required to evaluate nonmedical opinions for supportability and consistency. 20 C.F.R. § 416.920c(d). A medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations

or restrictions." 20 C.F.R. § 404.1513(a)(2).  A nonmedical opinion is any opinion that is not a medical opinion.  20 C.F.R. § 404.1513(a)(4).

Here, Dr. Rosenthal's opinion is not a medical opinion because it does not contain a functional assessment of Plaintiff's abilities despite her limitations.  When asked to provide such an analysis, Dr. Rosenthal merely listed his observations of Plaintiff during the exam.  (R. at 566–67).  For example, when asked to describe Plaintiff's abilities and limitations in understanding, remembering, and completing directions, Dr. Rosenthal stated that Plaintiff appeared to have low average intelligence, has been able to learn assigned tasks on jobs as long as people take the time to teach her or give her time to learn.  (R. at 566).  He also noted her past job history and said she was cooperative and able to follow along during the interview.  (*Id.*).  When asked for other functional limitations, Dr. Rosenthal gave similar answers.  (R. at 566–67 (failing to give functional analyses when asked about Plaintiff's abilities to maintain attention, to respond appropriately to supervision and co-workers, and to respond to work pressures in a work setting)).  None of these answers, as the ALJ noted, amounts to a functional assessment.  (R. at 88 (citing (R. at 561–67)).  Thus, the opinion is not a medical opinion under the regulations.  *Torres v. Bisignano*, No. 3:24-CV-01509, 2025 WL 3785659, at *6 (M.D. Tenn. Nov. 20, 2025) (finding the examination was not a medical opinion because "it does not state what Plaintiff 'can still do despite [her] impairment(s).'"), *report and recommendation adopted*, No. 3:24-CV-01509, 2026 WL 19410 (M.D. Tenn. Jan. 2, 2026).

Accordingly, the ALJ did not need to evaluate the opinion for consistency, and he did not err by failing to do so.

### C.    Interpretation of Objective Medical Evidence in Functional Terms

As this Court recently reiterated, "when determining the [RFC] of a claimant, [the ALJ] has 'discretion to seek additional or clarifying information' if the information on the record is

insufficient." *Ashley B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-690, 2025 WL 957561, at *2 (S.D. Ohio Mar. 31, 2025) (citing 20 C.F.R. § 416.920b); *see also Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.")).  Yet, the process outlined by the regulations, "gives exclusive control over the consideration of evidence to the ALJ and does not mention any requirement of an ALJ to request a medical opinion for every piece of evidence." *Id.* (citing 20 C.F.R. § 416.920b).  Ultimately, the responsibility for determining a plaintiff's RFC rests with the ALJ, not a physician. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *see also Rudd v. Comm'r Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).  ("[T]o require the ALJ to base [his] RFC finding on a physician's opinion . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.").

Plaintiff's final assigned error contemplates this line between when an ALJ must seek additional medical opinions to interpret medical evidence and when an ALJ may craft an RFC based on the same.  As applied, Plaintiff argues that the ALJ shirked his obligation to develop the record when it contained a "critical body of objective medical evidence" that was unaccounted for in a medical opinion.  (Doc. 8 at 14–17).  Rather, the ALJ impermissibly formulated Plaintiff's RFC based on his own interpretation of the medical evidence that post-dated any medical opinion.  (*Id.*).

Plaintiff offers three post-medical-opinion records to support this alleged error.  The first is a May 2023 x-ray of Plaintiff's lumbar spine interpreted by Diane H. Anderson, D.O.  (R. at 729–730).  Dr. Anderson noted grade 1 anterolisthesis of L4 on L5.  (R. at 729).  She commented that this was a new finding compared to a prior study from September 2015.  (*Id.*).  The second record is a July 2023 note by Barbra Wise, FNP, stating of Plaintiff's sciatica, that she has "several

red flags and symptoms, including weakness on left, decreased sensation, decreased DTRs, falling, and urinary incontinence . . . [she] also reports significant muscle spasms." (R. at 668). The final record is an August 2023 MRI read by Aleksander Rekhtman, M.D. (R. at 742–743). Dr. Rekhtman noted "multilevel discogenic degenerative changes and arthrosis" with the degenerative changes "most pronounced at L4-5 where there is severe facet arthrosis with grade 1 anterolisthesis and disc uncovering contributing to mid narrowing of the spinal canal and biliterate subarticular zone compromise without definite descending nerve root abutment." (R. at 743). He also observed "moderate bilateral L4 foraminal narrowing." (*Id.*).

Up front, Plaintiff's error mischaracterizes the ALJ's opinion. Plaintiff cites to several cases for the proposition that an ALJ may not interpret raw medical data. (Doc. 8 at 14–16 (citing *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600–601 (S.D. Ohio 2013) and *Colaner v. Comm'r of Soc. Sec.*, No. 12-CV-00716, 2013 WL 5487037, at *4 (S.D. Ohio Sept. 30, 2013))). In none of the examples Plaintiff provides did the ALJ interpret raw medical data. Rather, he considered data interpretations by Drs. Anderson and Rekhtman. (R. at 86 (citing R. at 729–30, 742–43)). This Court and others are clear that this alone is not error. *See e.g.*, *Jamie A. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-00238, 2024 WL 4010024, at *10 (S.D. Ohio Aug. 30, 2024) ("Because the new medical evidence was not raw medical data, the ALJ did not need a new medical opinion to evaluate that evidence and determine Plaintiff's RFC."), *report and recommendation adopted*, No. 3:23-CV-238, 2024 WL 4240688 (S.D. Ohio Sept. 19, 2024); *Robert D. v. Comm'r of Soc. Sec.*, No. 3:23-CV-001, 2023 WL 4348871 (S.D. Ohio July 5, 2023) (finding an ALJ did not interpret raw medical data where he "reviewed the reports from medical professionals after Plaintiff underwent various examinations"), *report and recommendation adopted*, No. 3:23-CV-1, 2023 WL 5002369 (S.D. Ohio Aug. 4, 2023); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719,

726–27 (6th Cir. 2013) (finding no error where ALJ relied on a radiologist's interpretation of x-rays without the further assistance of a medical expert, stating that while the x-rays were raw medical data, the radiologist's report was not); *Carr v. Comm'r of Soc. Sec.*, No. 5:23-CV-00187-BMB, 2024 WL 1556398, at *13 (N.D. Ohio Jan. 8, 2024) ( "[A]n ALJ does not interpret 'raw medical data' where it has already been 'read and interpreted' by a medical professional." (citation omitted)), *report and recommendation adopted*, No. 5:23-CV-00187, 2024 WL 1343473 (N.D. Ohio Mar. 30, 2024).

The real underlying issue is whether the ALJ could craft the functional limitations in the RFC using these records, despite not having a medical opinion interpreting the records in functional terms. (*See* Doc. 8 at 15 ("The record establishes that the ALJ interpreted multiple objective data points in functional terms that [were] either not reviewed or not interpreted in functional terms by the medical sources.")). Here, Plaintiff calls attention to the ALJ's evaluation of the state agency medical consultants' 2022 opinions. State agency medical consultants, Abraham Mikalov, M.D. and W. Scott Bolz, M.D., found Plaintiff could perform a range of light work, "with postural and environmental limits." (R.at 87 (citing, *e.g.*, R. at 158–59, 169)). Based in part on records that showed Plaintiff had reduced range of motion in her spine, they opined that Plaintiff would be able to stand or walk for about six hours in an eight-hour workday. (*See* R. at 158, 168). The ALJ found the doctors somewhat persuasive but ultimately departed from the opinions related to sitting and walking. (*Id.* (citing R. at 743)). In justifying the departure, the ALJ cited Dr. Rekhtman's findings that Plaintiff's lumbar MRI revealed "moderate and severe findings." (R. at 86 (citing R. at 743). The ALJ gave Plaintiff "the benefit of the doubt," limiting her to light work with only four hours of standing and walking rather than six. (R. at 87 (citing R. at 743)).

Plaintiff takes issue with the ALJ's finding that she was capable of light work with more restricted exertional limitations based on both the state agency reviewers' opinions and Dr. Rekhtman's 2023 MRI reading.  According to Plaintiff, the MRI reading—and the two other 2023 records related to her back—constitute a "critical body of objective medical evidence" upon which the ALJ cannot base functional findings without an updated medical opinion.  (Doc. 8 at 14).  This language comes from caselaw, specifically *Deskin* and *Kizys*, which suggests an ALJ cannot make residual functional capacity findings based on an "no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence" unless the records show "relatively little physical impairment" such that the ALJ can "render a commonsense judgment about functional capacity." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-CV-25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011) (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008)).  In such cases, says the Northern District of Ohio, the ALJ should garner an updated medical opinion.  *Id.*

This Court and others have strongly criticized the implications of *Deskin* and its progeny as going beyond what is required of the ALJ under the Social Security regulations and Sixth Circuit precedent.  *See, e.g.*, *Ashley B.*, 2025 WL 957561, at *3 (noting the *Deskin* rule contradicts Sixth Circuit precedent, "as the rule requires that the ALJ cannot consider evidence without a medical opinion and must request additional opinion or examinations"); *Lawson v. Comm'r of Soc. Sec.*, No. 1:20-CV-324, 2021 WL 2659176, at *9 (S.D. Ohio June 29, 2021) (finding *Deskin* has been criticized in nearly two dozen cases and collecting cases), *report and recommendation adopted*, No. 1:20-CV-324, 2021 WL 3663649 (S.D. Ohio Aug. 18, 2021).  But even where courts apply the precepts of *Deskin*, the "key inquiry" is still whether the ALJ "fully and fairly developed the record through a conscientious probing of all relevant facts." *Jeffrey K. v. Comm'r of Soc. Sec.*,

No. 3:24-CV-00124, 2025 WL 2533838, at *5 (S.D. Ohio Sept. 3, 2025) (citation omitted); *Robert D.*, 2023 WL 4348871, at *5 (noting that even where a court applies *Deskin*, the result is not automatic remand); *see also Davidson v. Comm'r of Soc. Sec.*, No. 3:22 CV 938, 2023 WL 5948122 (N.D. Ohio Sept. 13, 2023) ("[R]eliance on 'stale' non-examining state agency opinions does not require remand.").

The Undersigned concludes that the ALJ was not obligated to obtain an updated medical opinion to craft Plaintiff's RFC. As this Court has stated, an "ALJ [is] entitled to rely on the opinions of the state agency medical and psychological consultants, even if the record contained later-submitted evidence, as long as the ALJ considered the later records and accounted for any relevant differences in them." *Molly H. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00181, 2025 WL 2630681, at *12 (S.D. Ohio Sept. 12, 2025). That is what the ALJ did here. Indeed, the three records Plaintiff offers to support this error show a decline in her physical condition when compared to the records reviewed by the state agency reviewers. (*Compare* R. at 668, 729–30, 742–43 *with* R. at 168 (citing only to Plaintiff's limited range of motion in her spine); *see also* R. at 551 (record underlying the state agency reviewers' limited range of motion finding)). But the ALJ expressly considered each of these records. (R. at 86 (citing R. at 668, 729–30, 742–43)). So, this is not a case where the ALJ completely ignored the post-dated records. *Cf. McCauley v. Comm'r of Soc. Sec.*, No. 3:20-CV-13069, 2021 WL 5871527 (E.D. Mich. Nov. 17, 2021) (remanding where none of the medical opinions or the ALJ considered two-years' worth of records documenting a plaintiff's "psychotic symptoms"), *report and recommendation adopted*, No. 20-CV-13069, 2021 WL 5867347 (E.D. Mich. Dec. 10, 2021).

Even more, the ALJ accounted for the differences between the records and the state agency reviewers' opinions when he acknowledged that the state agency reviewers did not have the benefit

17

of the 2023 MRI results. (R. at 87). Because of the differences, he imposed more restrictive functional limitations. (*Id.*). Taking the state agency reviewers' functional limitation opinion and tailoring it based on the other evidence in the record is well within the ALJ's purview. *Cf. McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where the ALJ relied upon "outdated" state agency physicians' opinions where he also took into account relevant changes in the plaintiff's condition and added restrictions based on those records and others); *Ashley B.*, 2025 WL 957561, at *3 (finding no error where "the ALJ thoroughly reviewed both the available medical opinions, as well as the postdated new evidence, which included radiological interpretations, before making his determination on Plaintiff's RFC"). *See also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

Additionally, the ALJ's RFC findings are both supported by substantial evidence and a byproduct of a conscientious probing of all relevant facts. In particular, the ALJ considered that in February 2020, an examination showed that Plaintiff had full musculoskeletal range of motion but with pain on manipulation of both hips. (R. at 85 (citing R. at 533–54)). The ALJ noted that in the same record, she was assessed with sciatica, referred to neurology, and directed to use aspercreme. (*Id.* (citing R. at 554)). And in May 2020, an x-ray showed no significant hip abnormality. (*Id.* (citing R. at 489)). The ALJ highlighted that in March 2022, Plaintiff had full muscular strength in all areas, though reduced lumbar range of motion. (*Id.* (citing R. at 549–53)).

That same assessment showed Plaintiff had normal spine curvature and no paravertebral muscle spasm or tenderness with percussion of the lumbar spinous processes. (*Id.* (citing R. at 555)). In December 2022, Plaintiff had a normal lower extremity venous doppler ultrasound, and in May 2023, a physical examination revealed full musculoskeletal range of motion. (R. at 86 (citing R. at 678, 731)). As reviewed above, the ALJ next considered the May 2023 x-ray of her lumbar spine, the July 2023 notes related to her back pain, and the August 2023 MRI. (*Id.* (citing R. at 668, 729–30, 742–43)). The ALJ further commented that in October 2023 when Plaintiff complained of worsening back pain, she was given medication. (*Id.* (citing R. at 760)). But the ALJ also found that in February 2024, Plaintiff had a normal EMG study, with no evidence of L2-S1 radiculopathy. (*Id.* (citing R. at 772)). As previously stated, the ALJ considered the state agency medical consultants' findings that Plaintiff could perform a range of light work with postural and environmental limitations, and ultimately found their opinions somewhat persuasive. (R. at 87).

This analysis demonstrates that the ALJ fully considered the arc of Plaintiff's medical history, including the records post-dating the state agency reviewers' opinions that showed some decline. At the same time, he also considered other post-dated records showing more typical results, including that Plaintiff had full musculoskeletal range of motion in May 2023 and a normal EMG study with no evidence of L2-S1 radiculopathy in February 2024. (R. at 86 (citing R at 678, 772)). Under these circumstances, the Undersigned cannot say the ALJ's RFC findings wholly lack substantial evidence. *See Carr*, 2024 WL 1556398, at *12–13. In such cases, the Undersigned defers to the ALJ, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted); *see also Ashley B.*, 2025 WL 957561, at *4 ("[W]hen the evidence could support

multiple conclusions, the decision of the ALJ 'must stand if the evidence could reasonably support the conclusion.'" (citation omitted)).

Two final points. Even if the Undersigned were to ignore the above and apply *Deskin* and *Kizys* as Plaintiff wants, the result would be the same. This is not a situation where the ALJ created functional limitations based on absolutely no medical source opinion. As explained, the ALJ tailored the functional limitations opined by the state agency reviewers based on a holistic read of the record. *See Ashley B.*, 2025 WL 957561, at *3–4. And further, Plaintiff makes no argument why the records she cites constitute "a critical body of objective medical evidence that was unaccounted for by a medical opinion, coupled with significant proof of potentially disabling conditions." *See Chelsea R. M. v. Comm'r of Soc. Sec.*, No. 2:24-CV-499, 2025 WL 758158, at *4 (S.D. Ohio Mar. 11, 2025). She simply describes the records, leaving the Undersigned to guess at why three records fit into this jurisprudence.

Lastly, though not dispositive, the Undersigned also notes that neither Plaintiff nor her representative requested a consultative examination or assistance gathering additional medical opinion evidence at Plaintiff's February 2024 disability hearing. (*See* R. at 100). Courts have observed that this cuts against a plaintiff's arguments under *Deskin*. *See, e.g.*, *Carr*, 2024 WL 1556398, at *15; *cf. Campbell v. Comm'r of Soc. Sec.*, No. 1:12CV1406, 2013 WL 1908145, at *8 (N.D. Ohio May 7, 2013) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation.").

Ultimately, "[t]here will always be some time lapse between the agency's consultants' reports and the ALJ hearing and decision." *Massey on behalf of K.L. v. Comm'r of Soc. Sec.*, No. 5:24-CV-2080, 2025 WL 1798248, at *12 (N.D. Ohio June 30, 2025) (citation omitted). Here, the

ALJ fully and fairly developed the record through a conscientious probing of all relevant facts, including evidence post-dating the medical opinions in the record.  And his ultimate findings are supported by substantial evidence.  Accordingly, remand is not warranted.

## IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRM** the Commissioner's decision.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: February 6, 2026            *s/* Kimberly A. Jolson
                                  KIMBERLY A. JOLSON
                                  UNITED STATES MAGISTRATE JUDGE